1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | | |
|---|---|---|
| DALE WAYNE CURTEN, | ) | CASE NO. CV 14-07934 MMM (PJWx) |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| QUALITY LOAN SERVICE CORPORATION and SELECT PORTFOLIO SERVICING, INC., | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

17
18
19
20
21
22
23
24

On October 14, 2014, Dale Wayne Curten filed this action against Quality Loan Service Corporation ("Quality").[1]  The court granted Curten leave to amend his complaint on December 12, 2014,[2] and on January 8, 2015, he filed an amended complaint alleging three claims against Quality and Select Portfolio Servicing, Inc. ("SPS") (collectively, "defendants").[3]  The first amended complaint states a claim for invasion of privacy against Quality, as well as claims for negligent hiring and violation of the Fair Debt Collection Practices Acts ("FDCPA"), 15 U.S.C. § 1692, *et seq*., against both

25

26   [1]Complaint, Docket No. 1 (October 14, 2014).

27   [2]Minute Order Granting Plaintiff's Request for Leave to Amend, Docket No. 14 (Dec. 12, 2014).

28   [3]First Amended Complaint, Docket No. 18 (Jan. 8, 2015).

1  defendants.[4]

2        On January 22 and 29, 2015, SPS and Quality filed motions to dismiss the first amended

3  complaint.[5]  On March 3, 2015, Curten filed an application for a temporary restraining order and

4  preliminary injunction.  The court denied the application on March 16, 2015, finding that a private

5  plaintiff cannot seek injunctive relief under the FDCPA, and that Curten had failed to show a likelihood

6  of imminent, irreparable harm or a likelihood of success on the merits of his claims.[6]  On March 20,

7  2015, Curten filed a first amended application for a temporary restraining order.  Because the amended

8  application was virtually identical to the original application, and did not address the deficiencies noted

9  in the court's March 16, 2015 order, the court denied it.[7]

10        On April 22, 2015, the court granted defendants' motion to dismiss Curten's FDCPA claim, and

11  declined to exercise supplemental jurisdiction over his state law claims.[8]  On May 4, 2015, Curten filed

12  a motion for reconsideration of the order dismissing the first amended complaint.[9]  The court denied that

13  motion on June 25, 2015.[10]

14        On May 4, 2015, Curten filed a second amended complaint alleging the same claims.[11]

15

16  _____

17      [4]*Id.*

18      [5]SPS's Motion to Dismiss, Docket No. 21 (Jan. 22, 2015); Quality's Motion to Dismiss, Docket
19  No. 25 (Jan. 29, 2015).

20      [6]Application for Temporary Restraining Order ("Application"), Docket No. 28 (Mar. 9, 2015);
Order Denying Application for a Temporary Restraining Order, Docket No. 29 (Mar. 16, 2015).

21
22      [7]Order Denying Application for Temporary Restraining Order and Preliminary Injunction,
Docket No. 32 (Mar. 20, 2015).

23      [8]Order Granting Motion to Dismiss Amended Complaint ("Order"), Docket No. 34 (Apr. 22,
24  2015).

25      [9]Motion for Reconsideration, Docket No. 38 (May 4, 2015).

26      [10]Order Denying Motion for Reconsideration, Docket No. 44 (June 25, 2015).

27      [11]Second Amended Complaint ("SAC"), Docket No. 39 (May 4, 2015).  Curten describes the
document as a first amended complaint on the docket.  The court refers to the pleading as the second
28  amended complaint to avoid confusion, given that it is the third complaint he has filed.

Defendants moved to dismiss the complaint on May 22, 2015.[12]  Curten opposes the motion.[13]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds defendants' motion to dismiss appropriate for decision without oral argument; the hearing calendared for July 27, 2015, is therefore vacated, and the matter taken off calendar.

## I.  FACTUAL BACKGROUND

Curten alleges that Quality is a debt collector and that, on July 14, 2014, he received a notice of default from Quality regarding his mortgage loan.[14]  In response, on August 4, 2014, Curten purportedly sent Quality a notice of validation of debt under 15 U.S.C. § 1692g, requesting that Quality validate or verify the alleged debt.[15]  Quality purportedly replied on August 14, 2014, providing a copy of an adjustable rate note, a mortgage executed in favor of Countrywide Home Loans, Inc., and a substitution of trustee that substituted Quality for Reconstruct Company N.A. as trustee under the deed of trust that secured the mortgage loan.[16]  Curten contends the August 14, 2014 communication did not validate the debt he purportedly owes Quality.[17]  On November 2, 2014, Quality's attorney allegedly called Curten; he asserted that Curten's lawsuit was groundless and that Quality was going to sell Curten's property at a foreclosure sale.[18]  Thereafter, on November 10, 2014, Curten purportedly sent

---

[12]Defendants' Motion to Dismiss the Second Amended Complaint ("Motion"), Docket No. 40 (May 22, 2015).

[13]Opposition to Motion to Dismiss Second Amended Complaint ("Opposition"), Docket No. 42 (June 3, 2015).

[14]SAC, ¶ 11.  See also *id.*, Exh. A (Notice of Default).

[15]*Id.*, ¶ 12.

[16]*Id.*, ¶ 13. Curten attaches Quality's response, which states that it is a trustee appointed to initiate non-judicial foreclosure proceedings pursuant to a deed of trust Curten executed on June 27, 2007.  The letter asserts that Quality is not a debt collector subject to the FDCPA.  (See SAC, Exh. C.)

[17]*Id.*

[18]*Id.*, ¶ 17.

a letter stating that Quality could not sell his home due to its FDCPA violations.[19]  On March 15, 2015, Curten allegedly contacted the Bank of New York Mellon, who is not a party to this case and whose relationship to the note is not pled, asking whether it possessed his note; it allegedly responded via email that it did not.[20]  Although not pled in the complaint, defendants' request for judicial notice indicates that Bank of New York Mellon took an assignment of Curten's loan as trustee of the The Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-23CB Mortgage Pass-Through Certificates, Series 2007-23CB.[21]

Curten asserts that SPS took an assignment or transfer of his mortgage loan while he was in default; he contends this makes SPS a debt collector under the FDCPA.[22]  On February 20, 2013, Curten received a dunning notice from SPS,[23] and on June 11, 2014, he sent SPS a notice of validation of debt.[24] SPS allegedly has not responded.[25]

## II.  DISCUSSION

### A.    Defendants' Request for Judicial Notice

Because Rule 12(b)(6) review is confined to the complaint, the court typically does not consider material outside the pleadings (e.g., facts presented in briefs, affidavits, or discovery materials) in deciding such a motion.  *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996).  It can, however, properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not

---

[19]*Id.*

[20]*Id.*, ¶ 3.

[21]Request for Judicial Notice ("RJN"), Docket No. 41 (May 22, 2015), Exh. B (Assignment of Deed of Trust).

[22]*Id.*, ¶ 16.

[23]*Id.*, ¶ 14; SAC, Exh. D (Dunning Notice).

[24]*Id.*, ¶ 15.

[25]*Id.*

1  attached, if their authenticity is not questioned.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th
2  Cir. 2001).

3      In addition, the court can consider  matters that are proper subjects of judicial notice under
4  Rule 201 of the Federal Rules of Evidence.  *Id.* at 688-89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th
5  Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th
6  Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th
7  Cir. 1990); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)
8  ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily
9  examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into
10  the complaint by reference, and matters of which a court may take judicial notice").[26]  The court is
11  "not required to accept as true conclusory allegations which are contradicted by documents referred
12  to in the complaint" or documents that are proper subjects of judicial notice.  *Steckman v. Hart*
13  *Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); see also *Sprewell v. Golden State Warriors*, 266
14  F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that
15  contradict matters properly subject to judicial notice or by exhibit").

16      Defendants ask that the court take judicial notice of a deed of trust, assignment of deed of
17  trust, substitution of trustee, notice of default, and notice of trustee's sale pertaining to Curten's
18  property and mortgage loan.[27]  The documents were recorded in the Kern County Recorder's Office,
19  and each has a document number and filing stamp.[28]  The court previously took judicial notice of
20  these same documents in deciding defendants' motion to dismiss the first amended complaint.[29]  As
21  noted in that order, other courts have taken judicial notice of such documents as public filings.  See
22  *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking

---

24  [26]Taking judicial notice of matters of public record does not convert a motion to dismiss into a
25  motion for summary judgment.  *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

26  [27]RJN at 2.

27  [28]RJN, Exhs. A-E.

28  [29]Order at 4-6.

1   judicial notice of documents recorded by the Los Angeles County Recorder's Office, including

2   deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL

3   1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201);

4   *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a

5   "[party] provided a reference number for the document, showing that it was in fact recorded; this

6   demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG

7   (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust,

8   notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as

9   each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS,

10  2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are

11  matters of public record.  As such, this court may consider these foreclosure documents"); *Distor

12  v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that

13  a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale

14  were matters of public record and thus proper subjects of judicial notice).  Consequently, the court

15  will take judicial notice of the documents that are the subject of defendants' request.

16      **B.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)**

17          A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

18  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory,"

19  or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica

20  Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations

21  pleaded in the complaint as true, and construe them and draw all reasonable inferences from them

22  in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

23  1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

24          The court need not, however, accept as true unreasonable inferences or conclusory legal

25  allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

26  555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

27  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

28  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### C.    Whether Curten's FDCPA Claim Must be Dismissed

The court previously dismissed Curten's FDCPA claim because he failed plausibly to allege that defendants were debt collectors under the statute.[30] Defendants contend the claim must once again be dismissed because he has failed adequately to plead this element.[31] The court agrees.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To effectuate this purpose, the Act prohibits a "debt collector" from making false or misleading representations and from engaging in various abusive and unfair practices.

To be held liable for violation of the FDCPA, a defendant must – as a threshold requirement – fall within the Act's definition of "debt collector." See *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); see also, e.g., *Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998). The FDCPA defines a "debt collector," in pertinent part, as

"any person who uses any instrumentality of interstate commerce or the mails in any

---

[30]Order at 8-10.

[31]Motion at 7-10.

1    business the principal purpose of which is the collection of any debts, or who

2    regularly collects or attempts to collect, directly or indirectly, debts owed or due or

3    asserted to be owed or due another."  15 U.S.C. § 1692a(6).

4    Thus, a "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of whose

5    business is the collection of debts (whether on behalf of himself or others); or (2) "a person" who

6    "regularly" collects debts on behalf of others (whether or not it is the principal purpose of his

7    business).  "To state a viable claim for violation of the FDCPA, a plaintiff must allege that the

8    defendant is a 'debt collector' collecting a 'debt.'"  *Ines v. Countrywide Home Loans*, No. 08cv1267

9    WQH (NLS), 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008).

10          The statute excludes from its scope "any person collecting or attempting to collect any debt owed

11   or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide

12   fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by

13   such person; (iii) concerns a debt which was not in default at the time it was obtained by such person;

14   or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction

15   involving the creditor."  15 U.S.C. § 1692a(6)(F).  Citing this provision, courts have concluded that

16   mortgage lenders and servicers are not "debt collectors" covered by the statute so long as they took

17   assignment of an interest in a loan prior to default by the debtor.  See *Perry v. Stewart Title Co.*, 756

18   F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that

19   a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee

20   of a debt, as long as the debt was not in default at the time it was assigned"); *Nool v. HomeQ Servicing*,

21   653 F.Supp.2d 1047, 1052-53 (E.D. Cal. 2009) (the definition of a debt collector "does not include [a]

22   consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt

23   was not in default at the time it was assigned," citing *Perry*, 756 F.2d at 1208); *Carillo v. CitiMortgage,

24   Inc.*, No. CV 09-02404 AHM, 2009 WL 3233534, *4 (C.D. Cal. Sept. 30, 2009).  Curten contends that

25   the assignment of his loan occurred after he was in default on the debt, rendering this line of cases

26

27

28

8

1    inapplicable.[32]

2        Curten's FDCPA claim must be dismissed for a more fundamental reason, however.  He

3    pleads no facts that could support a finding either that it is the principal purpose of defendants'

4    businesses to collect debts or that defendants regularly collect debts owed to others.  The second

5    amended complaint alleges that defendants are debt collectors because they "received an assignment

6    or transfer of a mortgage while the debt was in default."[33]  Absent additional facts concerning the

7    nature of defendants' respective businesses, Curten has not adequately pled that they are debt

8    collectors, and his FDCPA claim fails.  See *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209

9    (9th Cir. 2013) (affirming the district court's dismissal of an FDCPA claim because "[t]he complaint

10   fails to provide any factual basis from which we could plausibly infer that the principal purpose of

11   Wells Fargo's business is debt collection.  Rather, the complaint's factual matter, viewed in the light

12   most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's

13   business, which is insufficient to state a claim under the FDCPA"); *Barber v. Rubin Lublin, LLC*,

14

15       [32]Although the trustee under a deed of trust has fiduciary obligations, courts have held that debt
     collection is central, rather than incidental to, the trustee's fiduciary obligations.  See, e.g., *Thomson v.*

16   *Professional Foreclosure Corp. of Washington*, No. 98-CS-478, 2000 WL 34335866, *7 (E.D. Wash.
     Sept. 25, 2000) ("No case discusses whether the trustee of a deed of trust is a bona fide fiduciary under

17   the FDCPA or whether any debt collection activities of such a trustee would be merely incidental to the
     trustee's fiduciary obligation.  The Federal Trade Commission's Commentary provides that '[t]he

18   exemption (i) for bona fide fiduciary obligations or escrow arrangements applies to entities such as trust
     departments of banks, and escrow companies.  It does not include a party who is named as a debtor's

19   trustee solely for the purpose of conducting a foreclosure sale (i.e., exercising a power of sale in the
     event of default on a loan).'  Commentary, 53 FR 50097, 50103 (1988).  Considering the Commentary

20   and the central role a trustee's power of sale plays in a deed of trust transaction, the Court finds that
     where a trustee of a deed of trust collects a debt by instituting foreclosure proceedings on real estate

21   securing a defaulted note, the trustee is not exempt from being a debt collector under 15 U.S.C.
     § 1692a(6)(F)(i).  In those circumstances, the trustee's debt collection activities are central, not

22   incidental, to the trustee's fiduciary obligations.  The Court holds that 15 U.S.C. § 1692a(6)(F)(i) does
     not exempt PelFCW from being an FDCPA debt collector"); see also *Townsend v. Federal Nat. Mortg.*

23   *Ass'n*, 923 F.Supp.2d 828 (W.D. Va. 2013) (concluding that the trustee under a deed of trust did not fall
     within the fiduciary exemption under the FDCPA and citing  *Wilson v. Draper & Goldberg, P.L.L.C.*,

24   443 F.3d 373, 377 (4th Cir. 2006) ("a trustee's actions to foreclose on a property pursuant to a deed of
     trust are not 'incidental' to its fiduciary obligation.  Rather they are central to it.  Thus, to the extent

25   Defendants used the foreclosure process to collect [plaintiff's] alleged debt, they cannot benefit from
     the exemption contained in § 1692a(6)(F)(i)")).

26

27

28       [33]SAC, ¶¶ 16, 41.

9

No. 1:13-CV-975-TWT, 2013 WL 6795158, *9 (N.D. Ga. Dec. 20, 2013) ("Under the FDCPA, a 'debt collector' is defined as 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'   Thus, 'a party can qualify as a "debt collector" either by using an 'instrumentality of interstate commerce or the mails[ ] in operating a business that has the principal purpose of collecting debts or by "regularly" attempting to collect debts.'  Here, Plaintiff's complaint [ ] alleges that Defendant is a debt collector, but [the] allegation is [not] sufficient to satisfy the second element of an FDCPA claim.  [I]n paragraph five (5) of his complaint, Plaintiff merely quotes the Act's definition of a debt collector and states that Defendant is one. . . .  Such an assertion is not only void of factual content but also a legal conclusion that the Court cannot consider," citing *Iqbal* and *Twombly*); *Ramsay v. Sawyer Property Management of Maryland, LLC*, 948 F.Supp.2d 525, 531-32 (D. Md. 2013) (finding that plaintiff failed to state an FDCPA claim where the amended complaint alleged that "Sawyer Property is a debt collector because it 'regularly collects or attempts to collect, directly or indirectly, debts asserted to be owed or due another' and that '[Sawyer Property] was 'in the business of collecting debts,'" and concluding that, "[w]ithout specific facts to bolster her claim, th[e] Court will not accept such threadbare allegations," citing *Iqbal*); *Sanchez v. Abderrahman*, No. 10-cv-3641 (CBA), 2012 WL 1077842, *5 (E.D.N.Y. Mar. 30, 2012) ("Plaintiffs have merely labeled the Foundry Defendants 'debt collectors' and quoted the statutory definition.  They provide no factual allegations indicating that the Foundry Defendants are involved with a 'business the principal purpose of which is [debt collection],' or that they have attempted here, or at any other time, to collect debts 'owed or due another.'  Their complaint with respect to the Foundry Defendants is nothing more than 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' that cannot survive a motion to dismiss. . . .  The FDCPA claim against the Foundry Defendants is therefore dismissed," citing *Iqbal* and *Twombly*); see also *Rodriguez v. Luchey & Mitchell Recovery Solutions, LLC*, No. 12-cv-03035-PAB-KMT, 2013 WL 2378557, *2 (D. Colo. May 30, 2013) ("[P]laintiff's allegations that Ms. Haugabook 'materially participated in Luchey's debt collection activities,' 'was personally involved in the collection of

Plaintiff's debt,' and 'regularly engaged, directly or indirectly, in the collection of Plaintiff's debt' are wholly conclusory because they merely recite the elements of an FDCPA claim and do not sufficiently allege Ms. Haugabook's personal participation in the events of October 5, 2012," citing *Iqbal*); *Bridgewater v. Tonna*, No. C-10-4966 MMC, 2011 WL 1211488, *2 (N.D. Cal. Mar. 30, 2011) (dismissing plaintiff's complaint without leave to amend where plaintiff alleged in conclusory fashion that defendant was a "debt collector," including, *inter alia*, that "[Defendant] was the 'debt collector' who use[d] interstate commerce and/or mail for the principal purpose of . . . collect[ing] of Roger['s] and/or Mary['s] debts," and citing *Brooks v. Citibank (South Dakota), N.A.*, 345 Fed. Appx. 260, 262 (9th Cir. Sept. 8, 2009) (Unpub. Disp.) (affirming the district court's dismissal of plaintiff's FDCPA claim where plaintiff alleged only that Citibank was a "debt collector," noting that such an allegation "represents nothing more than a '[t]hreadbare recital[ ] of the elements of a cause of action, supported by [a] mere conclusory statement[ ]," and citing *Iqbal* and *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)); *In re Crippen*, 345 B.R. 115, 119 (E.D. Pa. 2006) ("The FDCPA generally applies only to 'debt collectors.' Elliot is characterized as a 'debt collector' [ ] in the Complaint. . . . [P]aragraph [six] states that Elliot is a 'debt collector pursuant to [the FDCPA] which, using the mails, regularly attempts to collect debts alleged to be due another.' Such a description does no more than parrot the statutory definition. This matters because the Third Circuit has explained: '[n]either 'bald assertions' nor 'vague and conclusory allegations' are accepted as true for purposes of a Rule 12(b)(6) challenge,'" citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).[34]

---

[34]See also *Casault v. Federal National Mortgage Association*, 915 F.Supp.2d 1113, 1126 (C.D. Cal. 2012) ("Although Plaintiffs allege Servicer Defendants are debt collectors, they do not support their allegation with any facts that show how Servicer Defendants were acting in a debt collecting capacity within the meaning of the FDCPA. '[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions.' Here, Plaintiffs have merely labeled the Servicer Defendants debt collectors and repeated the allegations they raised under their fraud claim"); *Nool*, 653 F.Supp.2d at 1052-53 ("Nothing in the complaint suggests that Barclays is a 'debt collector.' Therefore, the FDCPA is not triggered by Plaintiff's allegations").

1    Accordingly, the court must dismiss Curten's FDCPA claim.

2    **D.    Whether the Court Should Decline to Exercise Supplemental Jurisdiction Over**

3    **Curten's State Law Claims**

4    Curten's FDCPA claim appears to provide the sole basis for subject matter jurisdiction in this

5    case.  Curten alleges that the court has federal question jurisdiction based on the claim, and that the court

6    has "concurrent jurisdiction over [his] [state] tort [ ] claims."[35]  He thus appears to assert that there is

7    no independent basis for exercising jurisdiction over the state law claims.[36]  Because it is presently

8    unclear whether Curten can state a viable federal claim, the court declines to exercise supplemental

9    jurisdiction over his state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to

10   exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all

11   claims over which it has original jurisdiction"); *Wade v. Regional Credit Association*, 87 F.3d 1098,

12   1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for

13   resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice");

14   _____

15   [35]SAC, ¶ 9.

16   [36]Nor, based on the allegations in the complaint, does it appear that the court has diversity
17   jurisdiction to hear the claims.  Curten alleges that he is a California citizen, and that Quality is
     a California "limited liability corporation" with its principal place of business in San Diego, California.
18   He asserts that SPS is a limited liability corporation formed under Utah law with a principal place of
     business in Salt Lake City, Utah.  It is unclear whether Curten intends to assert that Quality and SPS are
19   corporations with limited liability or limited liability companies; these, of course, are two distinct types
     of legal entity.  The distinction is critical for jurisdictional purposes, because the citizenship of each form
20   of entity is determined differently.  A corporation is a citizen of its state of incorporation and the state
     where it has its principal place of business.  See 28 U.S.C. § 1332(c)(1).  An LLC "has the citizenship[
21   ] of all of its members."  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir.
22   2006).  Curten alleges that Quality is incorporated in California with its principal place of business in
     California.  Thus, if Quality is a corporation, it is a citizen of California, and complete diversity is
23   lacking.  To the extent Quality and SPS are LLCs, Curten fails to allege any facts concerning the
     citizenship of their members.
24
        The party seeking to sue in federal court always bears the burden of establishing that the
25   court has subject matter jurisdiction to hear the action.  *Kokkonen v. Guardian Life Ins. Co.*, 511
     U.S. 375, 377 (1994); *Association of American Medical Colleges v. United States*, 217 F.3d 770,
26   778-79 (9th Cir. 2000); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.
27   1989).  Because Curten's allegations fall short of demonstrating that the citizenship of the parties is
     diverse, the court cannot exercise diversity jurisdiction.  Accordingly, the only basis for exercising
28   jurisdiction over Curten's state law claims is supplemental jurisdiction.

1   *Harrell v. 20th Century Insurance Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable

2   for a district court to remand remaining pendent claims to state court"); *Kennedy v. Full Tilt Poker*, No.

3   CV 09-07964 MMM (AGRx), 2010 WL 3984749, *3 (C.D. Cal. Oct. 12, 2010) ("With the RICO claim

4   dismissed, the court declines to exercise supplemental jurisdiction over plaintiffs' non-federal claims");

5   *Anderson v. Countrywide Financial*, No. 2:08-cv-01220-GEB-GGH, 2009 WL 3368444, *6 (E.D. Cal.

6   Oct. 16, 2009) ("Since state courts have the primary responsibility to develop and apply state law, and

7   the *[United Mine Workers of America v.] Gibbs* values do not favor continued exercise of supplemental

8   jurisdiction over Plaintiff's state claims, Plaintiff's state claims are dismissed under 28 U.S.C. §

9   1367(c)(3)"). See also *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless

10   decisions of state law should be avoided both as a matter of comity and to promote justice between the

11   parties, by procuring for them a surer-footed reading of applicable law").

12       **E.**     **Whether the Court Should Grant Curten Leave to Amend**

13         Defendants ask the court to dismiss the second amended complaint with prejudice. This is only

14   the second time the court has passed on the merits of Curten's complaint, however. Despite the fact that

15   Curten did not cure all of the deficiencies noted by the court in its prior order granting defendants'

16   motion to dismiss, he did address some, and it is not clear that the complaint could not be saved by

17   amendment. The court therefore grants Curten leave to amend. See *Kendall v. Visa U.S.A., Inc.*, 518

18   F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the

19   complaint could not be saved by amendment"); *California ex rel. California Department of Toxic

20   Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to

21   amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182

22   (1962)). This comports with "the [importance of the] rule favoring liberality in amendments to

23   pleadings" for *pro se* litigants. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). See also *Hebbe

24   v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and

25   *Twombly* did not alter courts' treatment of *pro se* filings; accordingly, we continue to construe *pro

26   se* filings liberally when evaluating them under *Iqbal*"); *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th

27   Cir. 1992) ("[B]efore a district court may dismiss a pro se complaint for failure to state a claim, the court

28   must provide the pro se litigation with notice of the deficiencies of his or her complaint and an

opportunity to amend the complaint prior to dismissal"). Curten is cautioned, however, that should he fail adequately to plead his claims in any third amended complaint, the court will likely find that further amendment would be futile and dismiss his FDCPA claim with prejudice.

### III.   CONCLUSION

For the reasons stated, the court grants defendants' motion to dismiss Curten's FDCPA claim. The court declines to exercise supplemental jurisdiction over Curten's state law claims. Curten's FDCPA claim is dismissed with leave to amend. Curten may file an amended complaint within twenty (20) days of the date of this order if he is able to remedy the deficiencies in the claim the court has noted. If Curten files an amended complaint, he may replead his state law claims.

Curten may not plead additional claims or add allegations that are not intended to cure the specific defects the court has noted. Should any amended complaint exceed the scope of leave to amend granted by this order, the court will strike the offending portions under Rule 12(f). See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); see also *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to federal law claim where the court had granted leave to amend only state law claims).

Because defendants are similarly situated, the court directs them to file a single motion to dismiss any amended complaint. Should defendants believe they require additional pages to address all of the arguments they desire to make, they may file an appropriate application seeking permission to file an oversized brief.

DATED: July 21, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

14